UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Robert N. Britton,

Plaintiff,

v.

U.S.S. Great Lakes Fleet, Inc.,

Defendant.

Civ. File No. 00-2160 (PAM/RLE)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment. For the reasons that follow, Plaintiff's Motion is denied, and Defendant's Motion is granted.

**BACKGROUND**

On August 17, 1999, Plaintiff Robert N. Britton ("Britton") was injured as he was performing his duties as a deckhand on the steamship Cason J. Calloway, a vessel owned by Defendant USS Great Lakes Fleet, now known as Great Lakes Transportation, LLC ("Great Lakes"). Britton alleges that he was lifting the cover to vent hatch 21 when he felt sharp pains in his back. Immediately before Britton attempted to lift the vent hatch cover he had lifted a heavy stairwell cover by himself. Britton subsequently underwent surgery on his back and in July 2000, he returned to work at Great Lakes.

Britton brought this five-paragraph Amended Complaint raising allegations that Great

FILED OCT 15 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD OCT 15 2001
DEPUTY CLERK

Lakes violated the Jones Act, 46 U.S.C. App. § 688, and failed to maintain a seaworthy vessel, and is liable for his injuries as a result. Britton also alleges that Great Lakes is liable for the alleged malpractice of the medical providers who treated him after his injury, because such medical providers allowed him to return to work where he aggravated the injury. He seeks the general maritime law remedy of maintenance and cure for his injuries.

Britton has moved for partial summary judgment, requesting that the Court strike all of Great Lakes' affirmative defenses. According to Britton, Great Lakes has offered no evidentiary support for its contention that Britton's claims are barred because he fraudulently misrepresented his medical history at the time of his pre-employment physical examination.

For its part, Great Lakes seeks summary judgment on all of the allegations of Britton's Amended Complaints. Great Lakes contends that there is no evidence to support Britton's allegations of negligence on the part of Great Lakes either in the assignment of duties, the maintenance of the vessel, or the provision of sufficient manpower on board. Moreover, Great Lakes asserts that Britton is precluded from receiving maintenance and cure because he fraudulently misrepresented to Great Lakes his prior injury history.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d

743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**A. Britton's Motion**

Britton contends that he is entitled to summary judgment on Great Lakes' affirmative defense that he fraudulently misrepresented his prior injuries at his pre-employment physical. The evidence Britton cites in support of his contention are the depositions of a Great Lakes' corporate representative designated pursuant to Fed. R. Civ. P. 30(b)(6) and of the person who signed Great Lakes' interrogatories on behalf of the company. In each case, the deponent professed no personal knowledge of the facts underlying the affirmative defense, namely, whether Britton had in fact been injured previously.

If these depositions were the only evidence on Great Lakes' affirmative defense then

Britton would be entitled to summary judgment on the defense. The depositions are not the only evidence, however. The physician who performed Britton's pre-employment physical examination, Dr. Richard Roach, testified that he asked Britton about prior back injuries and that Britton did not disclose that he had suffered such an injury a mere three weeks before the examination. This testimony, in an of itself, establishes that there is a dispute about the material fact of the alleged misrepresentation. Summary judgment is therefore inappropriate.

Britton attempts to avoid this inevitable conclusion by claiming that, even if he had disclosed the prior injury at the time of the examination, Great Lakes would have hired him anyway. Whether Great Lakes would have hired Britton had it known of the prior injury is of no moment in determining whether genuine issues of material fact exist on Great Lakes' affirmative defense. Britton's contention on this point may be a matter for the jury to consider at some point, but it does not negate the existence of factual disputes on Great Lakes' affirmative defense.

**B. Great Lakes' Motion**

Great Lakes asserts that Britton has failed to come forward with any evidence to establish that Great Lakes was negligent in providing the proper number of crewmen to assist Britton or in maintaining a seaworthy vessel, and that the lack of proof of such negligence precludes Britton's claims under the Jones Act, the doctrine of seaworthiness, and for medical malpractice. Finally, Great Lakes contends that Britton cannot bring a cause of action for maintenance and cure because he fraudulently misrepresented his prior injury

history.

1. Jones Act

The Jones Act allows "[a]ny seaman who shall suffer personal injury in the course of his employment" to maintain an action for damages for that injury. 46 U.S.C. App. § 688(a). The seamen's action is premised on negligence; therefore, he may recover only if the shipowner negligently breached a duty toward him and he was damaged as a result. See Rutherford v. Lake Michigan Contractors, Inc., 132 F. Supp.2d 592, 596 (W.D. Mich. 2000) (explaining the elements of a Jones Act claim). In this case, Britton claims that Great Lakes was negligent in failing to have sufficient crew on deck to assist Britton in his assigned tasks.

The only evidence Britton cites in support of his contention that there were not enough crewmembers on deck the day he was injured is his own testimony. His testimony standing alone, however, is insufficient as a matter of law to support Britton's assertions. See Liberty Lobby, 477 U.S. at 256 (finding that non-moving party may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial). Through discovery, Britton could have secured the ship's logs, the testimony of his crewmates, or other evidence to establish the number of hands on deck on August 17, 1999. He has failed to do this, and without some evidence of how many men were or were not on deck that day, Britton's Jones Act claim fails as a matter of law.

Britton claims that he has established that there were insufficient crewmembers on deck through Great Lakes' failure to deny the following request for admission: "There were

no available deckhands to assist Plaintiff in lifting stairwell covers on August 17, 1999." Great Lakes argues that Britton's requests for admissions were served well after the discovery cut-off date in this matter and Great Lakes was therefore not obliged to answer the requests. Whether requests for admissions are indeed discovery and subject to discovery cut-off dates is a matter of some dispute. However, even if Britton timely filed his requests for admissions, the Court cannot use Great Lakes' failure to respond to those requests to establish facts clearly in dispute between the parties. See Lakehead Pipeline Co. v. Am. Home Assurance Co., 177 F.R.D. 454, 458 (D. Minn. 1997) (Erickson, M.J.) (quoting Kosta v. Connolly, 709 F. Supp. 592, 594 (E.D. Pa.1989) for the proposition that requests for admissions "are not to be employed as a means 'to establish facts which are obviously in dispute or to answer questions of law'"). Here, the number of available deckhands is an essential fact that is very much in dispute, and thus was not the proper subject of a request for admission. Britton has failed to come forward with evidence to establish an essential element of his claim, and that claim must therefore fail.

2. Seaworthiness

The doctrine of seaworthiness imposes liability without fault on a shipowner who fails to "supply a seaworthy vessel and appurtenances that are reasonably safe and fit for their intended use." Dickens v. United States, 815 F. Supp. 913, 918 (E.D. Va. 1993). Seaworthiness "extends not only to the vessel but to the crew." Crumady v. J.H. Fisser, 358 U.S. 423, 427 (1959). A vessel with adequate crew but too few crewmembers assigned to

a task is unseaworthy as a matter of law. Am. President Lines, Ltd. v. Welch, 377 F.2d 501 (9th Cir. 1967).

As the Jones Act discussion makes clear, Britton has failed to establish that there were too few crewmembers on deck at the time of his injury. Thus, he has not proved that the vessel was unseaworthy, and his claim on this ground fails.

3. Maintenance and Cure

"Maintenance and cure is a contractual form of compensation given by general maritime law to a seaman who falls ill while in the service of his vessel." Evans v. Blidberg Rothchild Co., 382 F.2d 637, 639 (4th Cir. 1967). The right to maintenance and cure is "very broad and rarely withheld," and is not premised on any negligence or even on any causal link between the seaman's employment and his injury. Wactor v. Spartan Transp. Corp., 27 F.3d 347, 352 (8th Cir. 1992). It is, however, subject to certain narrow exceptions. "If the seaman is required to provide pre-employment medical information and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired," then he is not entitled to an award of maintenance and cure if the injury he suffered is causally linked to the misrepresented or concealed condition. Id. (quotations omitted).

Great Lakes argues that Britton's failure to disclose his prior history of back injuries at his pre-employment physical examination renders Britton ineligible for maintenance and cure. There is no dispute that Britton did not disclose a back injury suffered mere weeks before the examination, nor is there a serious dispute that Great Lakes sought such

information.[1] Nor is there a dispute about whether Britton's injury is causally linked to his previous back injuries. Britton's own expert witness, Dr. Richard Freeman, testified that Britton's injury in August 1999 was an "aggravation of an underlying preexistent problem." (Freeman Dep. at 13.) There are no factual disputes that the exception to Great Lakes' duty to pay maintenance and cure applies, and therefore Britton is not entitled to maintenance and cure.

4. Medical Malpractice

Finally, Britton claims that Great Lakes is liable to him for the alleged negligence of Dr Roach, the physician hired by Great Lakes who cleared Britton to return to work in July 2000. Britton contends that the decision that he was ready to return to work was negligent because he allegedly aggravated his back injury after he returned to work.

This claim fails because, even assuming that Great Lakes can be liable for the acts of Dr. Roach, Britton has come forward with no evidence that Dr. Roach or any other physician committed malpractice. In fact, the only evidence he cites for the proposition that he was unfit for duty in July 2000 actually states that he was fit for duty at the time he was returned

[1] Britton argues that his prior injuries would not have precluded Great Lakes from hiring him, so the information he concealed was not material. "Material" means "of substantial import" or "important." Random House College Dictionary (revised ed. 1982). Whether or not Great Lakes would have hired Britton had it known of his prior back injury, it is beyond cavil that a back injury suffered three weeks before a pre-employment physical examination for a job as physically demanding as a deckhand is information that is important for Great Lakes to know. Thus, Britton's prior injuries were material information. Moreover, it is clear from the record that Great Lakes, through Dr. Roach, specifically inquired about Britton's previous injuries. Thus, the disclosure of previous injuries was "plainly desired" by Great Lakes.

to work. (See Pl.'s Opp'n Mem. at 19 (citing Roach Dep. at 29); Roach Dep. at 30 ("[O]n June 21st, 2000 . . . [Britton] did meet the requirements of the fleet and so he was returned to work without restriction.").) Moreover, Britton's own expert witness testified that on May 31, 2000, Britton had no evidence of any neurological problem. (Freeman Dep. at 14.) The mere fact that Britton was injured when he returned to work does not establish that Dr. Roach committed malpractice in returning Britton to work. Absent some evidence that Dr. Roach exercised a lack of due care, Britton's claim of medical malpractice must fail.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court concludes that no genuine issues of material fact exist on Plaintiff's claims. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Clerk Doc. No. 54) is **GRANTED**; and

2. Plaintiff's Motion for Partial Summary Judgment (Clerk Doc. No. 50) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 15, 2001

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES: OCT 15 2001

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*